IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JANETTE EBONY ROBINSON, #459360, | ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | NO. 3:25-cv-00707 |
| v. | ) ) | JUDGE RICHARDSON |
| DEQUAN STEVENS, et al., | ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pro se plaintiff Janette Robinson, a state inmate in custody at the West Tennessee State Prison (WTSP), filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2), and a Motion for Appointment of Counsel. (Doc. No. 3.)

This case is before the Court for ruling on Plaintiff's IFP application and Motion, and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because Plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that she lacks the funds to pay the entire filing fee, the IFP application (Doc. No. 2) is **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350

instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against his inmate trust account. 28 U.S.C. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of her trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in her account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from her present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to her new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the

Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

**B. Factual Allegations**

The Complaint claims that Plaintiff's Eighth Amendment rights were violated on April 12, 2025, when she was confined at the Debra K. Johnson Rehabilitation Center in Nashville.[1] (Doc. No. 1 at 5, 7.) On that day, after Plaintiff "put [her] hands up in submission and cooperation," she

---

[1] All of the following facts in this paragraph are alleged in the Complaint and, consistent with the discussion above, taken as true for present purposes.

was attacked in her cell by correctional officer Dequan Stevens, who first struck her with his fist and then stomped her face, head, and back. (*Id.* at 5.) Correctional officers Corey Mongremory and A. Atwood also repeatedly punched Plaintiff. (*Id.*) Atwood then "maced [Plaintiff] in the face while [she] was in a[] fetal position." (*Id.*) Plaintiff began to vomit and could not breathe because "Cert/Tact Force Ruban" had his knee on her neck. (*Id.* at 6.) After Sergeant Jasmine Cooper yelled at Ruban, "'that's enough[,] get off of her!'", Ruban removed his knee from Plaintiff's neck and then told Plaintiff not to test him again, after which he punched Plaintiff in the forehead. (*Id.*) All of this was witnessed by Cooper, Sergeant George Stubbs, and two correctional officers who are not named as Defendants. (*Id.* at 7.) Major Fredrick Estes came to Plaintiff's cell thirty minutes later but refused to provide medical attention, medication, or food trays for over 24 hours. (*Id.*) Plaintiff suffered internal and external injuries from this beating and had a "CAT Scan scheduled with x-rays." (*Id.*) She asks the Court to award damages against Defendants Stevens, Mongremory, Atwood, and Ruban for their use of excessive force; against Defendants Cooper and Stubbs for failing to intervene while the other officers assaulted Plaintiff; and against Defendant Estes for denial of prompt medical care. (*Id.*)

## C. Analysis

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the use of excessive force against convicted inmates. The "core judicial inquiry" in considering such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In addition to this subjective inquiry, there is also an objective component to Eighth Amendment excessive-force claims, which requires the pain inflicted to be sufficiently serious. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v.*

*Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). However, the Court may not apply a "de minimis injury" test to such claims, as "the judicial inquiry should focus on 'the nature of the force rather than the extent of the injury.'" *Williams*, 631 F.3d at 384 (quoting *Wilkins*, 559 U.S. at 34).

The Complaint alleges that Defendants Stevens, Mongremory, Atwood, and Ruban assaulted Plaintiff with their fists, feet, and knees, resulting in injuries and pain sufficient to cause Plaintiff to vomit and pass blood in her urine and stool. (Doc. No. 1 at 7.) Plaintiff allegedly had her hands up in a submissive posture prior to this assault in her cell. Presuming the truth of these allegations, the Court finds that the serious nature of the force, the maliciousness of its application, and the seriousness of the resulting injury are colorably established for purposes of initial review. Further factual development may reveal otherwise and may even vindicate the level of force used. But at this early stage, Plaintiff's allegations are sufficient to allow her claims under the Eighth Amendment and the state law of assault and battery (*see* Doc. No. 1 at 3) to proceed against Stevens, Mongremory, Atwood, and Ruban in their individual capacities.

The Complaint seeks to hold Defendants Cooper and Stubbs liable for watching their fellow officers attack Plaintiff without intervening. Depending upon the time it took for the attack to unfold and for the blows to land before Cooper yelled at Ruban to get off Plaintiff's neck, both Cooper and Stubbs may be liable for failing to intervene. *See Riethmeier v. Oakland Cnty.*, 808 F. Supp. 3d 764, 791 (E.D. Mich. 2025) (finding it clearly established that "an officer with a sufficient opportunity to intervene to prevent excessive force has a duty to take action to end it") (citing *Ontha v. Rutherford Cnty., Tennessee*, 222 F. App'x 498, 506 (6th Cir. 2007) (stating that the court of appeals has recognized a duty to intervene where the "underlying episode of excessive force has spanned a sufficient period of time for a nearby defendant to both perceive what was happening

and intercede to stop it")). This Eighth Amendment claim will proceed for further development against Cooper and Stubbs in their individual capacities.

Allegedly, Defendant Estes responded to Plaintiff's cell thirty minutes after the attack but refused to provide either any medical attention for Plaintiff's injuries or any food trays for over 24 hours. (Doc. No. 1 at 7.) An Eighth Amendment violation is colorably claimed when a prison official is deliberately indifferent to a prisoner's serious medical needs. Such a claim has both an objective and a subjective component. As applied to this case, the objective component requires that Plaintiff's injuries from being beaten and maced present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018), *i.e.*, "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If there was such a need, such that the subjective component needs to be assessed, the subjective component requires that Estes understood yet consciously disregarded that need to treat Plaintiff's condition without delay. *See Rhinehart*, 894 F.3d at 738; *see also Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (describing deliberate indifference as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm") (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)). For purposes of initial review, the Court finds that the Complaint's allegations are sufficient to establish a plausible claim that Plaintiff's medical needs were objectively serious in the wake of sustaining multiple blows from the fists, knees, and feet of four officers, and that Estes was deliberately indifferent in failing to respond to those needs for over 24 hours. This Eighth Amendment claim will proceed for further development against Estes in his individual capacity.

All Defendants are also sued for damages in their official capacities. "While '[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, the official-capacity claims against these officers employed at a Tennessee Department of Correction (TDOC) facility[2] are treated as claims against TDOC, which is not a "person" within the meaning of Section 1983, but is, for these purposes, equivalent to the State of Tennessee and therefore not a proper defendant. *Hix v. Tennessee Dep t of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983.")); Tenn. Code Ann. § 4-3-101(5) (listing Department of Correction as an administrative department of the state)). Accordingly, the claims against Defendants "in their official capacities, as agents of [a] state administrative department[], . . . are noncognizable" and will not proceed. *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003).

### III. CONCLUSION

As explained above, the Complaint in this case will be allowed to proceed against Defendants in their individual capacities.[3] With the case still in the pleading stage, Plaintiff's Motion for Appointment of Counsel (Doc. No. 3) is **DENIED** as premature, without prejudice to renewal at a later date after service of process is accomplished.

---

[2] According to the TDOC website, "[t]he Debra K. Johnson Rehabilitation Center (DJRC), located in Nashville, serves as the primary diagnostic center for female inmates in Tennessee" and was "[o]riginally known as the Tennessee Prison for Women." https://www.tn.gov/content/tn/correction/state-prisons/state-prison-list/debra-k--johnson-rehabilitation-center.html (last visited Mar. 13, 2026).

[3] The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of Defendants Stevens, Mongremory, Cooper, Stubbs, Atwood, Estes, and Ruban. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendants. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE